UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEVEON V. WADE,

        Plaintiff,

v.                                                   Case No. 22-cv-743-pp

MILWAUKEE COUNTY, INSPECTOR DOBSON,
EARNELL R. LUCAS, and C.O. THOMAS,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 6), DENYING AS MOOT PLAINTIFF'S FIRST MOTION TO AMEND COMPLAINT (DKT. NO. 7) AND GRANTING PLAINTIFF'S SECOND MOTION TO AMEND COMPLAINT (DKT. NO. 9)**

---

Plaintiff Keveon V. Wade, who is confined at Dodge Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his constitutional rights. Dkt. No. 1. On July 19, 2022, the court received from the plaintiff a motion for leave to amend his complaint; he combined the motion with his proposed amended complaint. Dkt. No. 7. On September 26, 2022, the court received a second motion for leave to amend the complaint; again, he combined the motion with the proposed second amended complaint. Dkt. No. 9. Because the defendants have not yet answered, the court will grant the plaintiff's second motion for leave to amend the complaint, accept and screen the second amended complaint and treat it as the operative complaint. See Fed. R. Civ. P. 15(a). The

court will deny as moot the first motion to amend the complaint. The court will direct the clerk's office to remove defendant David Crowley and add defendant Milwaukee County to the case caption.

The plaintiff also filed a motion to proceed without prepaying the filing fee, dkt. no. 4, and a motion asking the court to appoint counsel to represent him, dkt. no. 6. This order resolves those motions. Because the defendants have not yet been served with the second amended complaint, and thus have not had the opportunity to decide whether to consent to a magistrate judge having the authority to decide the case, the case was randomly referred to a U.S. District Court Judge for the limited purpose of screening the complaint. The case will be returned to Magistrate Judge William E. Duffin for further proceedings after entry of this order.

## I. Motion for Leave to Proceed Without Prepaying the Filing Fee (Dkt. No. 4)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the incarcerated plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He must then pay the balance of the $350 filing fee over time through deductions from his prisoner account. Id.

On July 26, 2022, the court ordered that by August 25, 2022, the plaintiff must pay $81.77 as an initial partial filing fee. Dkt. No. 5. The court

received that fee on August 12, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the full filing fee over time in the manner explained at the end of this order.

**II.     Screening the Second Amended Complaint (Dkt. No. 9)**

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether a complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

A. The plaintiff's Allegations

The plaintiff was in custody at the Milwaukee County Jail at the time of the incidents alleged in his complaint. Id. at ¶17. The plaintiff has sued Milwaukee County, Sheriff Earnell Lucas, Correctional Officer P. Thomas and Deputy Inspector Aaron Dobson. Dkt. No. 9 at 3-4. The complaint explains that many people incarcerated in the jail are facing lengthy sentences, that the State Public Defender's Office is understaffed and that incarcerated persons often go months without lawyers; they buy third-party legal materials to learn how to litigate criminal and civil cases. Id. at ¶15. The complaint alleges that the Milwaukee County Jail has an unofficial "Penguin Only" policy, which requires incarcerated persons to order printed materials only from Penguin Publishing. Id. at ¶¶9-10. A corrections officer named Macemon (not a defendant) apparently indicated that the reason for the Penguin Only policy is because the jail has a contract with Penguin. Id., ¶12. Penguin Publishing does not carry any books that involving the issues in the plaintiff's complaint (such

4

as "Prosecutorial Misconduct, Prison Education Guide and The Colossal Book of Criminal Citations"); the plaintiff alleges that it does not carry any books for litigating cases or helping one to further one's education. Id. at ¶¶14, 16. The plaintiff says Penguin's catalog consists mostly of fiction, non-fiction and novels, with a "small variety" of authors. Id. at ¶14. The plaintiff alleges that the jail does not provide incarcerated persons with the kind of materials he has identified. Id. at ¶25.

On at least three occasions, the plaintiff tried to order materials from other vendors, such as Amazon Prime, PIN and Barnes and Noble. Id. The plaintiff says that he was denied the right to receive mail and to receive information from the outside in relation to these attempts. Id. On May 23, 2022, the plaintiff asked defendant P. Thomas, who works as a mail clerk at the jail, about an order he placed with PIN on May 16, 2022; the order was for "Prosecutorial Misconduct" and "Prison Education Guide." Id. Thomas stated that she returned the books to the publisher because they were not ordered from Penguin Publishing. Id. On June 9, 2022, the plaintiff's order of "The Colossal Books of Criminal and Civil Citations" were returned to the sender. Id. On June 27, 2022, the plaintiff received from Amazon Prime "The Criminal Law Handbook" and "Meisteir Manual for Prisoners Law Suits;" both books were denied delivery and placed in the plaintiff's property. Id. The plaintiff was not given an opportunity to contest or challenge the enforcement of the Penguin Policy in any of these instances. Id. at ¶18. The plaintiff also was not notified of the delivery or return of the orders. Id. at ¶19. The plaintiff says that Thomas

5

Case 2:22-cv-00743-WED-PP   Filed 10/18/22   Page 5 of 15   Document 10

told him she personally rejected the books because they were not from Penguin. Id. at ¶20.

The plaintiff alleges that defendant Aaron Dobson "should have knew that his enforcement of the Penguin only policy violated the inmates First Amendment rights;" he says that he "verbally informed the Inspector Dobson" in a conversation on June 12, 2022. Id. at ¶21. The plaintiff alleges that Sheriff Earnell Lucas and Dobson had the authority to approve or deny a jail policy or custom as final. Id. at ¶22.

The plaintiff alleges that the defendants have no legitimate penological interest that justifies the Penguin only policy. Id. at ¶23. He asserts that the policy has caused him irreparable harm because it violates his right to free speech under the First Amendment and his right to due process under the Fourteenth Amendment. Id. at ¶24. He asserts that he has lost money as a result of the policy because he was not able to get a refund for the returned books. Id. at ¶25. He also says he's been injured by being unable to further his education, engaged in speech with the outside world and send and receive mail. Id. The plaintiff alleges that in the past, he and other incarcerated persons at the jail were allowed to receive the same books "pursuant to a court order being enforced in which defendants presented no penological interest for the policy." Id. at ¶26. He maintains that the defendants knew or should have known that the Penguin only policy infringed on his constitutional rights. Id. at ¶27.

The plaintiff sues Dobson and Lucas in their official capacities and seeks to enjoin them from enforcing the Penguin Only policy. Id. at 13. He also seeks monetary damages. Id. at 14.

B.  Analysis

The plaintiff claims that the defendants violated his First Amendment rights and his due process rights under the Fourteenth Amendment.

An institution's refusal to allow an incarcerated person to obtain a book "presents a substantial First Amendment issue. Freedom of speech is not merely freedom to speak; it is also freedom to read." King v. Fed. Bureau of Prisons, 415 F.3d 634, 638 (7th Cir. 2005). At a later stage in the case, the defendants may be able to demonstrate that they have a legitimate penological interest in implementing the Penguin Only policy, id. (observing that there may be valid penological reasons for limiting incarcerated persons' access to certain types of books), but at this stage, the plaintiff has stated sufficient facts to allow him to proceed on a First Amendment claim.

Under the Fourteenth Amendment, "[i]n order to state a claim for a procedural due process violation of a property right, [the plaintiff] must establish: (1) a protected property interest; (2) a deprivation of that property interest by someone acting under the color of state law; and (3) a denial of due process." Booker-El, 668 F.3d at 900. The plaintiff has stated sufficient facts to allow him to proceed on a due process claim under the Fourteenth Amendment. He alleges that he paid for the books; in her capacity as mail clerk for the jail, Thomas returned those books; the plaintiff could not get a refund

7

for the books; and he had no way to challenge Thomas's decision or prevent her from returning the books.

The plaintiff may pursue his First Amendment and Fourteenth Amendment claims against P. Thomas and Aaron Dobson in their individual capacities because he alleges that both of them enforced the policy against him. He also may pursue a First Amendment claim and a Fourteenth Amendment claim against Milwaukee County. For a municipality to be liable for a plaintiff's constitutional violation, the plaintiff must allege that the violation was a result of a municipal policy or custom. Glisson v. Ind. Dep't of Corrs., 849 F.3d 372, 379 (7th Cir. 2017) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-691 (1978)). This includes "governmental customs" that result in constitutional violations even though the "custom has not received formal approval through the body's official decision-making channels." Id. The plaintiff has alleged sufficient facts to indicate that Milwaukee County, through the jail, has an informal custom or policy and may proceed against the municipal entity.

The plaintiff may not proceed against Earnell Lucas or Dobson in their official capacities. It is well-established that suing a municipal official in his or her official capacity is the same thing as suing the municipality. See, *e.g.*, Snyder v. King, 745 F.3d 242, 246 (7th Cir. 2014). Because the court is allowing the plaintiff to proceed against the municipality, he does not need to sue Lucas or Dobson in their official capacities. Also, because the plaintiff does not allege that Lucas was personally involved in the constitutional violations,

he may not proceed on any claims against Lucas. See Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)) (requiring personal liability and individual participating in the constitutional violation). The court will dismiss defendant Lucas.

### III. Motion to Appoint Counsel (Dkt. No. 6)

The plaintiff also asks the court to appoint him counsel. Dkt. No. 6. In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake.

9

Watts v. Kidman, No. 21-1055, 2022 WL 3038877, at *6 (7th Cir. Aug. 2, 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. The plaintiff states he contacted three attorneys but has yet to hear back from them, thus satisfying the first prong. Dkt. No. 6, ¶4.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the

case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has identified three lawyers whom he wrote asking for assistance; he says he has not heard back from any of them. Dkt. No. 6 at ¶4. The court finds that the plaintiff has satisfied the first requirement for appointment of counsel. But he has not satisfied the second.

The plaintiff states that this is a complex case, that he has limited knowledge of the law and that he has limited access to the law library at the jail. The case is in the early stages, but based on the pleadings he has filed so far, the court believes that he is more than capable of representing himself. His pleadings are clear, thorough and easy to read. The court understands his claims. He successfully has alleged two constitutional claims and a Monell claim.

At this point, ball is in the defendants' court. The court will have the second amended complaint served on the defendants. They will have the opportunity to respond. If they file a motion to dismiss, the court will allow the plaintiff to respond. If they answer the complaint, the court will set a scheduling order, and the case will enter the discovery phase. Discovery consists of written interrogatories (questions) and requests for documents. A person does not need to be trained in the law to ask or truthfully answer questions or request documents.

Once discovery is completed, the defendants may choose to file a dispositive motion. In cases such as this, a dispositive motion typically is a

motion for summary judgment, where a party asks the court to dismiss the case because it believes there are no genuine disputes of material fact and that the party is entitled to judgment as a matter of law. If the defendant files a motion for summary judgment in this case, the plaintiff does not need to be educated in First Amendment or Fourteenth Amendment law to respond to the motion, nor does he need to contact experts to respond to a summary judgment motion. Summary judgment depends on whether there is a genuine dispute of material fact. The plaintiff clearly knows the facts of his case, as his memorandum in support of this motion and his second amended complaint demonstrate. The court is familiar with the law and will not require the plaintiff to explain the legal basis of his claim. The court will need the plaintiff to explain which facts asserted by the defendants are in dispute and the basis for his contention that those facts are in dispute.

The memorandum and declaration filed in support of his motion to appoint counsel, as well as other filings in this case, demonstrate that the plaintiff is capable of clearly communicating his issues and concerns. The court believes he is able to participate in discovery and to respond to a summary judgment motion and tell his side of the story. The court will deny without prejudice the motion to appoint counsel. If circumstances change or the plaintiff encounters obstacles that he does not believe he can handle on his own, he may renew his motion.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **DENIES AS MOOT** the plaintiff's first motion to amend his complaint. Dkt. No. 7.

The court **GRANTS** the plaintiff's second motion to amend his complaint. Dkt. No. 9. The complaint at Dkt. No. 9 is now the operative complaint. The clerk will update the docket accordingly.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 6.

The court **ORDERS** that defendant Earnell Lucas is **DISMISSED**.

Under an informal service agreement between Milwaukee County and this court, a copy of the second amended complaint (Dkt. No. 9) and this order have been electronically transmitted to Milwaukee County for service on defendants Milwaukee County, Aaron Dobson and P. Thomas. The court **ORDERS** that those defendants must file a responsive pleading to the second amended complaint within 60 days.

The court **ORDERS** that the agency having custody of the plaintiff must collect from his institution trust account the **$268** balance of the filing fee by collecting monthly payments from his prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments

13

must be clearly identified by the case name and number assigned to this case. If the plaintiff is transferred to another county, state, or federal institution, the transferring institution must forward a copy of this order along with his remaining balance to the receiving institution.

The court will send a copy of this order to the Warden at Dodge Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that failure to timely file documents and other required information may result in the dismissal of this case for failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the dismissal of this case without further notice.

Along with this order, the court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

The court **ORDERS** that this case is returned to Magistrate Judge William E. Duffin. The case is no longer referred to Chief Judge Pamela Pepper.

Dated in Milwaukee, Wisconsin this 18th day of October, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**